IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF OHIO
EASTERN DIVISION

**DENESE A.,**

      **Plaintiff,**

  v.

**COMMISSIONER OF
SOCIAL SECURITY,**

      **Defendant.**

Civil Action 2:20-cv-6167
Judge James L. Graham
Magistrate Judge Elizabeth P. Deavers

## REPORT AND RECOMMENDATION

Plaintiff, Denese A., brings this action under 42 U.S.C. § 405(g) for review of a final decision of the Commissioner of Social Security ("Commissioner") denying her applications for social security disability insurance benefits and supplemental security income. This matter is before the United States Magistrate Judge for a Report and Recommendation on Plaintiff's Statement of Errors (ECF No. 13), the Commissioner's Memorandum in Opposition (ECF No. 16), and the administrative record (ECF No. 12). Plaintiff did not file a reply. For the reasons that follow, it is **RECOMMENDED** that the Court **OVERRULE** Plaintiff's Statement of Errors and **AFFIRM** the Commissioner's decision.

### I. BACKGROUND

Plaintiff protectively filed her current applications for disability insurance benefits and supplemental security income on December 1, 2017, alleging that she has been disabled since December 30, 2015, due to Post Traumatic Stress Disorder ("PTSD"), depression, memory loss,

"various mental issues," and anxiety. (R. at 253-60, 288.) Plaintiff's applications were denied initially on April 7, 2018 and upon reconsideration on August 16, 2018. (R. at 74-143.) Plaintiff sought a *de novo* hearing before an administrative law judge (the "ALJ"). (R. at 173-75.) Plaintiff, who was represented by counsel, appeared and testified at a video hearing held on October 15, 2019. (R. at 35-73.) A Vocational Expert ("VE") also appeared and testified. (*Id.*) ALJ Deborah E. Ellis issued a decision finding that Plaintiff was not disabled within the meaning of the Social Security Act on January 15, 2020. (R. at 12-35.) The Appeals Council denied Plaintiff's request for review and adopted the ALJ's decision as the Commissioner's final decision. (R. at 1-6.) This matter is properly before this Court for review.

## II. HEARING TESTIMONY

The ALJ summarized Plaintiff's statements to the Agency and her relevant hearing testimony:

> Even though [Plaintiff] reported she was able to work after the alleged onset date, she nonetheless alleged she is disabled because of PTSD, depression, anxiety, neurocognitive issues, back pain, tennis elbow, and sleep apnea. According to [Plaintiff], she experiences pain, panic attacks, crying spells, and mood swings. She testified she has panic attacks once a week and tries to stay at home as much as possible to avoid crowds because they give her anxiety. However, [Plaintiff] testified that when she is happy, she is able to do everything normal people do but lies in bed all day when she feels sad. [Plaintiff] testified that twice a month she is unable to sleep for three days then sleeps for three days.
>
> She contended she has required medical treatment, mental health counseling, and medications such as buspirone. She testified she began seeing a mental health therapist twice in week in August 2019, which she said coincided with a domestic violence incident. Prior to the August 2019 domestic violence incident, however, she testified she was only seeing a psychiatrist once a month for medication checks. She testified she tried several medications but none of them worked and some of them made her sick. She admitted during the hearing that she [was] no longer on

> any psychotropic medications because she feels like they do not work. At the time of the hearing, she was only taking medicine for digestive issues.
>
> Despite reporting a history of relatively conservative treatment, she maintained she has difficulty with sitting, standing, walking, lifting, squatting, bending, kneeling, climbing stairs, reaching, speaking, memory, completing tasks, concentration, comprehension, following instructions, social interaction, and handling stress. During the hearing, she testified she [sic] her legs give out if she tries to walk more than half an hour. She admitted she was unsure how long she is able to sit before she has to change positions or stand before she needs to sit. She testified she is able to lift a gallon of milk. However, she has described a wide variety of demanding activities of daily living that indicate her impairments are not as limiting as alleged. In particular, while she suggested she sometimes does not bathe or change her clothes for three to four days, she explained she is able to live alone, shop in stores, care for her pets, prepare simple meals, manage her finances, socialize with family, use her phone to go online, and drive short distances. She also testified she has been able to fix her steps, front door, and flooring, as well as help her mother level her camper, move, and unpack. Additionally, she testified she gets along better with strangers than she does with people she knows.

(R. at 20, internal citations omitted.)

### III. RELEVANT MEDICAL RECORDS

The ALJ summarized the relevant medical records concerning Plaintiff's alleged physical impairments as follows:

> \*\*\* [Plaintiff] sporadically presented for treatment with complaints of dizziness, low back pain, hearing problems, and gastrointestinal pain. However, additional physical limitations are not necessitated. Even though physical examinations occasionally suggested tenderness, spasms, and reduced range of motion of the low back, they consistently revealed no signs of lumbar or neurologic deficits. She testified she is only able to walk about thirty minutes before her legs give out, but numerous medical professionals concluded her ambulatory status was normal and she could heel/toe/tandem walk without considerable trouble. In any event, the evidence presented does not contain objective medical evidence to support greater limitations than assessed in this decision.

(R. at 24, internal citations omitted.)

The ALJ summarized the relevant medical records concerning Plaintiff's alleged mental impairments as follows:

> With regard to her mental functioning, the evidence of record demonstrated she is capable of performing unskilled work within the workplace stress, social interaction, and off-task parameters defined above even with consideration of her alcohol dependence. Acceptable medical sources have assessed her with neurocognitive disorder, depression, alcohol dependence, and anxiety. However, while [Plaintiff] asserted she has been hospitalized three times for psychiatric reasons, she has not required any inpatient mental health treatment since years before the alleged onset date; for example, she related that she was once hospitalized years ago because she had attempted suicide while drunk.
>
> Mental health professionals have prescribed numerous psychotropic medications but she insisted none of these medications worked and asserted that some of them caused medication side effects such as anger and agitation. According to treatment notes, her mood had clearly improved after healthcare providers had tried different medications and combinations of medications. By March 2019, she had run out of medications. She testified she no longer abuses alcohol, but medical records showed she has consumed as many as six beers per day. She reported she was in Alcoholics Anonymous and was aware she could call people for support that but chose not to. These factors, along with the fact that there are several different mental health evaluations in the file (without significant follow-up), indicated she is noncompliant with recommended treatment and therapy.
>
> Even with a history of alcohol use and treatment noncompliance, [Plaintiff] is able to perform mental tasks as described above. She has endorsed symptoms such as memory loss, panic attacks, fatigue, eating problems, problems getting along with others, and feelings of worthlessness. However, mental status examinations consistently yielded relatively unremarkable findings. As discussed earlier, numerous medical professionals described her as cooperative, pleasant, euthymic, alert, and oriented with normal mood, affect, memory, grooming, intellectual functioning, comprehension, insight, judgment, and ability to follow instructions. As such, while she was occasionally noted to present as depressed, anxious, and restless with memory, insight, and judgment deficits, she is capable of performing unskilled work as described above.

(R. at 24-25, internal citations omitted.)

## IV. ADMINISTRATIVE DECISION

On January 15, 2020, the ALJ issued her decision. (R. at 12-34.) The ALJ found that Plaintiff meets the insured status requirements of the Social Security Act through June 30, 2017. (R. at 18.) At step one of the sequential evaluation process,[1] the ALJ found that Plaintiff has not engaged in substantially gainful activity since December 30, 2015, the alleged onset date. (*Id.*) The ALJ found that Plaintiff had the severe impairments of neurocognitive disorder, depression, substance addiction disorder – alcohol, and anxiety. (R. at 19.) The ALJ further found that Plaintiff did not have an impairment or combination of impairments that met or medically equaled one of the listed impairments described in 20 C.F.R. Part 404, Subpart P, Appendix 1. (R. at 20.)

Before proceeding to Step Four, the ALJ set forth Plaintiff's residual functional capacity ("RFC") as follows:

> After careful consideration of the entire record, [The ALJ] finds that [Plaintiff] has the residual functional capacity to perform medium work as defined in 20 CFR

---

[1] Social Security Regulations require ALJs to resolve a disability claim through a five-step sequential evaluation of the evidence. *See* 20 C.F.R. § 404.1520(a)(4). Although a dispositive finding at any step terminates the ALJ's review, *see Colvin v. Barnhart*, 475 F.3d 727, 730 (6th Cir. 2007), if fully considered, the sequential review considers and answers five questions:

1. Is the claimant engaged in substantial gainful activity?
2. Does the claimant suffer from one or more severe impairments?
3. Do the claimant's severe impairments, alone or in combination, meet or equal the criteria of an impairment set forth in the Commissioner's Listing of Impairments, 20 C.F.R. Subpart P, Appendix 1?
4. Considering the claimant's residual functional capacity, can the claimant perform his or her past relevant work?
5. Considering the claimant's age, education, past work experience, and residual functional capacity, can the claimant perform other work available in the national economy?

*See* 20 C.F.R. § 404.1520(a)(4); *see also Henley v. Astrue*, 573 F.3d 263, 264 (6th Cir. 2009); *Foster v. Halter*, 279 F.3d 348, 354 (6th Cir. 2001).

> 404.1567(c) and 416.967(c) except she has additional limitations. [Plaintiff] can frequently climb ramps and stairs. She can never climb ladders, ropes, or scaffolding. She can frequently stoop, kneel, crouch, and crawl. [Plaintiff] must avoid all exposure to unprotected heights and moving mechanical parts. [Plaintiff] can understand, remember, and carry out simple routine and repetitive-type work in a job with flexible pace and no strict production requirements. She can have superficial interaction with coworkers, supervisors, and the public. [Plaintiff] would be off-task up to fifteen percent of the day due to attention/concentration difficulties.

(R. at 22.)

At step four of the sequential process, the ALJ determined that Plaintiff is unable to perform her past relevant work as a coding machine operator, a semi-skilled, medium exertion job; a salesperson, a semi-skilled, light job; or a commercial cleaner, classified as unskilled, heavy exertional job. (R. at 26-27.) Relying on the VE's testimony, at Step 5, the ALJ found that Plaintiff can perform other jobs that exist in significant numbers in the national economy. (R. at 27-28.) She therefore concluded that Plaintiff was not disabled under the Social Security Act at any time since December 30, 2015, the alleged onset date. (R. at 28.)

## V. STANDARD OF REVIEW

When reviewing a case under the Social Security Act, the Court "must affirm the Commissioner's decision if it 'is supported by substantial evidence and was made pursuant to proper legal standards.'" *Rabbers v. Comm'r of Soc. Sec.*, 582 F.3d 647, 651 (6th Cir. 2009) (quoting *Rogers v. Comm'r of Soc. Sec.*, 486 F.3d 234, 241 (6th Cir. 2007)); *see also* 42 U.S.C. § 405(g) ("[t]he findings of the Commissioner of Social Security as to any fact, if supported by substantial evidence, shall be conclusive . . . ."). Under this standard, "substantial evidence is defined as 'more than a scintilla of evidence but less than a preponderance; it is such relevant

evidence as a reasonable mind might accept as adequate to support a conclusion.'" *Rogers*, 486 F.3d at 241 (quoting *Cutlip v. Sec'y of Health & Hum. Servs.*, 25 F.3d 284, 286 (6th Cir. 1994)).

Although the substantial evidence standard is deferential, it is not trivial. The Court must "'take into account whatever in the record fairly detracts from [the] weight'" of the Commissioner's decision. *TNS, Inc. v. NLRB*, 296 F.3d 384, 395 (6th Cir. 2002) (quoting *Universal Camera Corp. v. NLRB*, 340 U.S. 474, 487 (1951)). Nevertheless, "if substantial evidence supports the ALJ's decision, this Court defers to that finding 'even if there is substantial evidence in the record that would have supported an opposite conclusion.'" *Blakley v. Comm'r of Soc. Sec.*, 581 F.3d 399, 406 (quoting *Key v. Callahan*, 109 F.3d 270, 273 (6th Cir. 1997)). Finally, even if the ALJ's decision meets the substantial evidence standard, "'a decision of the Commissioner will not be upheld where the SSA fails to follow its own regulations and where that error prejudices a claimant on the merits or deprives [Plaintiff] of a substantial right.'" *Rabbers*, 582 F.3d at 651 (quoting *Bowen v. Comm'r of Soc. Sec.*, 478 F.3d 742, 746 (6th Cir. 2007)).

## VI. ANALYSIS

In her Statement of Errors, Plaintiff asserts that the ALJ's RFC is not an accurate representation of Plaintiff's maximum remaining ability to perform basic work activities because the ALJ did not properly consider the impact that Plaintiff's degenerative disc disease and her limitations in concentration, persistence, or pace had on her ability to work. (ECF No. 13 at 5-13). The Undersigned disagrees and concludes that substantial evidence supports the ALJ's determinations regarding Plaintiff's RFC.

As a preliminary matter, a claimant's RFC is an assessment of "the most [a claimant] can still do despite [her] limitations." 20 C.F.R. § 416.945(a)(1). An ALJ must assess a claimant's RFC based on all of the relevant evidence in a claimant's case file. *Id*. The governing regulations describe five different categories of evidence: (1) objective medical evidence, (2) medical opinions, (3) other medical evidence, (4) evidence from nonmedical sources, and (5) prior administrative medical findings. 20 C.F.R. §§ 404.1513(a)(1)-(5); 416.913(a)(1)-(5). Objective medical evidence is defined as "medical signs, laboratory findings, or both." 20 C.F.R. §§ 404.1513(a)(1); 416.913(a)(1). "Other medical evidence is evidence from a medical source that is not objective medical evidence or a medical opinion, including judgments about the nature and severity of your impairments, your medical history, clinical findings, diagnosis, treatment prescribed with response, or prognosis." 20 C.F.R. §§ 404.1513(a)(3); 416.913(a)(3). "Evidence from nonmedical sources is any information or statement(s) from a nonmedical source (including you) about any issue in your claim." 20 C.F.R. §§ 404.1513(a)(4); 416.913(a)(4). "Medical opinion" and "prior administrative medical finding" are defined as follows:

> (2) Medical opinion. A medical opinion is a statement from a medical source about what you can still do despite your impairment(s) and whether you have one or more impairment-related limitations or restrictions . . . .
>
>> (i) (A) Your ability to perform physical demands of work activities, such as sitting, standing, walking, lifting, carrying, pushing, pulling, or other physical functions (including manipulative or postural functions, such as reaching, handling, stooping, or crouching);
>>
>> (B) Your ability to perform mental demands of work activities, such as understanding; remembering; maintaining concentration, persistence, or pace; carrying out instructions; or responding appropriately to supervision, co-workers, or work pressures in a work setting;

> (C) Your ability to perform other demands of work, such as seeing, hearing, or using other senses; and
>
> (D) Your ability to adapt to environmental conditions, such as temperature extremes or fumes . . . .
>
> * * *
>
> (5) Prior administrative medical finding. A prior administrative medical finding is a finding, other than the ultimate determination about whether you are disabled, about a medical issue made by our Federal and State agency medical and psychological consultants at a prior level of review (see § 416.1400) in your current claim based on their review of the evidence in your case record, such as:
>
> > (i) The existence and severity of your impairment(s);
> >
> > (ii) The existence and severity of your symptoms;
> >
> > (iii) Statements about whether your impairment(s) meets or medically equals any listing in the Listing of Impairments in Part 404, Subpart P, Appendix 1; . . . .
> >
> > (v) . . . your residual functional capacity;
> >
> > (vi) Whether your impairment(s) meets the duration requirement; and
> >
> > (vii) How failure to follow prescribed treatment (see § 416.930) and drug addiction and alcoholism (see § 416.935) relate to your claim.

20 C.F.R. §§ 404.1513(a)(2)(i), (5); 416.913(a)(2)(i), (5).

### A. Lumbar Degenerative Disc Disease

Plaintiff maintains that the ALJ erred in determining that she could perform medium work on a sustained basis and therefore the RFC is not supported by substantial evidence. The ALJ assessed Plaintiff's low back pain as follows:

> She has also presented for treatment with complaints of low back pain beginning in late 2017, but there was no objective evidence from an acceptable medical source of degenerative disc disease until a December 2018 diagnostic scan showed multilevel degenerative changes in the lumbar spine. . . . . September 2018 x-rays were

>unremarkable with no acute abnormalities. . . . She also admitted that doctors sent her to pain management but she did not want to take narcotics. Additionally, she acknowledged during the hearing that physicians did not recommend surgical intervention. The medical evidence of record also revealed no evidence of any treatment for low back pain after the December 2018 diagnostic scan.
>
>. . .
>
>Therefore, the undersigned finds that these impairments were medically treated, not durational, and/or no longer substantially interfere with her ability to function on a daily basis. No acceptable medical source has recommended or anticipated aggressive treatment for any of these conditions. As such, the undersigned finds them to be non-severe. Nevertheless, the undersigned has considered the combined effects of the severe and non-severe impairments in assessing [Plaintiff's] functional capacity pursuant to 20 CFR 404.1523 and 416.923.

(R. at 19.)

A plaintiff bears the burden of proving the existence and severity of limitations imposed by her impairments. *Jones v. Comm'r of Soc. Sec.*, 336 F.3d 469, 474 (6th Cir. 2003.) Plaintiff, therefore, had the burden of proving her lumbar degenerative disc disease was a severe impairment. The issues, then are, whether she met that burden and whether the ALJ properly found that her lumbar degenerative disc disease caused no more than mild limitations in Plaintiff's ability to perform work-related activities.

Substantial evidence supports the ALJ's conclusion. Plaintiff first complained of low back pain in December 2017 to her primary care provider, Dr. Jeffrey VanMeter. Dr. VanMeter observed tenderness at the SI joints and mild spasm, but straight leg raise testing was negative for radicular pain. (R. at 508.) She continued to complain of low back pain in January and April 2018, but her physical exam findings were unchanged. (R. at 664-666.) She continued to exhibit negative straight leg raises and only mild spasms. (*Id*.) A lumbar MRI in December 2018, revealed multilevel

degenerative disc disease with canal narrowing. (R. at 1314.) The record does not contain any further treatment for her back pain after the December 2018 MRI.

Plaintiff insists the ALJ improperly found that her lumbar disc disease was not a severe impairment and "erroneously minimize[d] [her] significant and consistently documented back pain, spasms, and the significant findings on the MRI from December 2018." (Pl's Brief at p. 7.) She focuses repeatedly on her diagnoses and abnormalities on exam. For instance, Plaintiff argues that "[t]he record also consistently documents [her] chronic back pain with emergency room trips, physicians' notes, and an MRI, performed during the relevant period. . . ." (Pl's Brief at p. 8.) Yet, it is settled law that diagnoses alone are insufficient to prove severity. *See Higgs v. Bowen*, 880 F.2d 860, 863 (6th Cir. 1988) ("[M]ere diagnosis of arthritis . . . says nothing about the severity of the condition"). A plaintiff must show, with objective medical evidence, that the diagnosed impairment causes functional limitations. *Long v. Apfel*, 1 F. App'x 326, 331 (6th Cir. 2001) ("When doctors' reports contained no information regarding physical limitations on the intensity, frequency, and duration of pain associated with a condition, [the Court of Appeals for Sixth Circuit] has regularly found substantial evidence to support a finding of no severe impairment."). Plaintiff in this case failed to provide any objective medical evidence of functional limitations resulting from this impairment. The few treatment records assessing her low back pain contain none of the typical indicators of functional limitations, such as abnormal gait, reduced strength, deceased sensation, or absent deep tendon reflexes.

Plaintiff maintains that, instead of relying on the substantial evidence of the record, the ALJ simply disregarded her symptoms of limited range of motion, persistent spasms, chronic pain, and

limited ability to stand and walk for a sustained period of time, after determining that the impairments were non-severe. A review of the record reveals, however, the ALJ did consider her nonsevere back impairment in the RFC discussion and her conclusion is supported by substantial evidence.

> The ALJ discussed Plaintiff's physical condition as follows:
>
> In terms of the [Plaintiff's] physical condition, the evidence of record simply does not support her allegations of disabling limitations. Rather, the medical evidence is sparse and reflects a history of sporadic, routine, and conservative treatment that is inconsistent with the degree of limitation alleged by [Plaintiff] in connection with these applications. As discussed above, none of her treating medical professionals have recommended or anticipated aggressive treatment for any of her allegedly disabling physical conditions. She has also never required inpatient treatment for her physical impairments.
>
> Nonetheless, the [ALJ] has elected to view the evidence in the light most favorable to [Plaintiff] and has included the exertional, postural, workplace hazard, and off-task restrictions in her residual functional capacity because she has sporadically presented for treatment with complaints of dizziness, *low back pain*, hearing problems, and gastrointestinal pain. . . . However, additional physical limitations are not necessitated. *Even though physical examinations occasionally suggested tenderness, spasms, and reduced range of motion of the low back, they consistently revealed no signs of lumbar or neurologic deficits. . . . She testified she is only able to walk about thirty minutes before her legs give out, but numerous medical professionals concluded her ambulatory status was normal and she could heel/toe/tandem walk without considerable trouble. . . .* In any event, the evidence presented does not contain objective medical evidence to support greater limitations than assessed in this decision.

(R. at 24 (emphasis added) (citations omitted.)

The ALJ here correctly found that the objective medical evidence supported postural and environmental limitations but did not support additional physical limitations. Here, Plaintiff's physical examinations showed tenderness and spasms, but no signs of lumbar neurological deficits.

12

(R. at 433, 574, 609, 665, 701, 715.) This objective evidence substantially supports the RFC finding for medium work with postural and environmental limitations.

The findings of the state agency medical consultants, which the ALJ also considered, further support the RFC finding:

> The opinions of the State agency medical consultants support the finding that the claimant is capable of performing unskilled medium work as described above . . . . State agency medical consultants Rannie Amiri, M.D., and Abraham Mikalov, M.D., opined [Plaintiff] is able to perform medium work involving postural and workplace hazard restrictions that mirror the ones provided above. State agency psychological consultants Courtney Zeune, Psy.D., and Aracelis Rivera, Psy.D., opined [Plaintiff] can carry out simple instructions in a setting with flexible pace and production requirements, interact superficially with coworkers, supervisors, and the public, and work in a setting where changes are explained.
>
> Although they did not examine or treat the claimant personally, Drs. Amiri, Mikalov, Zuene, and Rivera licensed professionals who are considered experts in the evaluation of disability. Moreover, they were able to review most of [Plaintiff's] records, allowing them to obtain a comprehensive, longitudinal assessment of [Plaintiff's] level of functioning. They also supported their opinions with objective findings and clinical evidence. Their opinions are consistent with the record as a whole, including evidence entered into the record at the hearing level. As summarized above, she has several physical and mental impairments, but examinations consistently yielded relatively normal physical examination, gait, and mental status findings. . . . Based on these factors, the [ALJ] concludes the opinions of the State agency consultants are persuasive. However, the [ALJ] has included the additional off-task restriction in [Plaintiff's] residual functional capacity to accommodate any attention and concentration deficits her physical pain and mental impairments may cause.

(R. at 25-26.)

State agency medical consultants are highly qualified and experts in the Social Security disability evaluation process. 20 C.F.R. §§ 404.1513a(b)(1), 416.913a(b)(1). Drs. Rannie Amiri and Abraham Mikalov reviewed the medical evidence of record and found that despite Plaintiff's back pain, she could lift and/or carry up to 50 pounds occasionally and 25 pounds frequently, stand

13

about 6 hours per day, sit about 6 hours per day, frequently climb ramps and stairs, stoop, kneel, crouch, and crawl, never climb ladders, ropes, and scaffolds, and tolerate no exposure to hazards. (R. at 84-85, 119-120.) These doctors noted that Plaintiff intermittently complained of low back pain, but she exhibited normal strength, sensation, and range of motion. (R. at 84, 119.) Because their opinions were consistent with the record as a whole and supported by objective findings, the ALJ properly found their opinions persuasive. *See* 20 C.F.R. §§ 1520c(a), (b) 416.920c(a), (b) (indicating ALJs will evaluate the persuasiveness of state agency findings by considering the factors of consistency and supportability).

      Plaintiff makes a tangential argument in passing that the ALJ "disregarded" Dr. Sparks's opinion. The Undersigned disagrees. Dr. Sparks wrote a letter opining that Plaintiff's "lower back prevents her from doing working, and doing most of her activities of daily living." (R. at 609.) The ALJ considered this letter, and others with similar opinions, but correctly declined to evaluate its persuasiveness because it was not a proper medical opinion, but a statement on an issue reserved to the Commissioner. (R. at 26.) The ALJ's conclusion is consistent with the Social Security Administration's regulations, which dictate that ALJs are not required to provide any analysis about statements on issues reserved to the Commissioner, including the issue of disability. 20 C.F.R. §§ 404.1520b(c)(3), 416.920b(c)(3).

      Substantial evidence supports the ALJ's physical RFC determination. The ALJ considered the evidence relating to Plaintiff's lumbar impairment in accordance with applicable legal standards. Accordingly, it is **RECOMMENDED** that the Court **OVERRULE** this Statement of Error.

### B. Limitations in Concentration, Persistence and Pace

Plaintiff contends that the ALJ's RFC determination does not adequately account for her limitations in concentration, persistence, or pace. As set out above, State agency psychological consultants Courtney Zeune, Psy.D., and Aracelis Rivera, Psy.D., "opined [Plaintiff] can carry out simple instructions in a setting with flexible pace and production requirements, interact superficially with coworkers, supervisors, and the public, and work in a setting where changes are explained." (R. at 25.) The ALJ found their opinions were persuasive because they were consistent with the record and supported but included an additional limitation that Plaintiff would be off task up to 15 percent of the day. (R. at 26.) The ALJ found that Plaintiff retained the ability to understand, remember, and carry out simple routine and repetitive work in a job with flexible pace, no strict production requirements, and superficial interaction with coworkers, supervisors, and the public and that she would be off-task no more than 15 percent of the day due to attention and concentration difficulties. (R. at 22.) The Undersigned finds that the ALJ properly assessed Plaintiff's mental limitations and substantial evidence supports the ALJ's conclusions.

The objective evidence supports the ALJ's decision. For example, Plaintiff saw Dr. Kevin Weber, a neurologist in March 2018 and was not taking any medication for depression. (R. at 571.) The tests administered during that evaluation showed minimal memory problems but no attention, abstraction, calculation, or executive functioning problems. (R. at 574-75.) A short time later, in May 2018, a neuropsychology evaluation revealed some problems with delayed recall, attention shifting, processing speed, and sustained attention. Yet, the neuropsychologist considered Plaintiff's performance to be within normal limits overall. (R. at 591-92.) She began

15

seeing a psychiatrist in June 2018 to receive medication but refused psychotherapy. (R. at 685-748.) At subsequent visits to her psychiatrist, she exhibited largely normal memory, normal thought process, and fair to good judgment, despite noncompliance with treatment. (R. at 702, 709, 716, 723, 729-30, 743-44.) The record reflects that when she took her medication as directed, her mood improved. (R. at 728.) Plaintiff was examined by another psychiatrist in September 2019, and exhibited unremarkable mood and affect and intellectual functioning with no impairment in judgment or memory. (R. at 766-67.) Based on this substantial evidence, the Undersigned finds that the ALJ properly concluded Plaintiff could perform simple, routine, and repetitive work with social functioning limitations.

Moreover, the state agency psychological consultants' findings also substantially support the ALJ's conclusions regarding Plaintiff's RFC. The psychological consultants, Courtney Zeune, Psy.D., and Aracelis Rivera, Psy.D., reviewed the medical evidence and found that Plaintiff had moderate limitations in concentration, persistence, and pace. Despite these limitations, the psychological consultants concluded that Plaintiff retained the ability to carry out simple instructions with flexible pace and production requirements. (R. at 86, 122.) The ALJ properly found their opinions were persuasive because they were consistent with the record and supported but added an additional limitation that Plaintiff would be off task up to 15 percent of the day. (R. at 71-72.) Again, substantial evidence supports this conclusion.

Plaintiff complains that the ALJ failed to incorporate all of the limitations found by the state agency consultants. But the state agency consultants identified moderate difficulties in several areas and then opined about Plaintiff's functional abilities and limitations despite those moderate

16

difficulties. They appraised Plaintiff's ability to maintain attention and concentration for extended periods as moderate and explained that even with her sustained attention and concentration abilities and limitations, Plaintiff still could carry out simple instructions with flexible pace and production requirements.  (R. at 86-87, 121-122.)  The ALJ properly relied on these assessments about Plaintiff's abilities and limitations in arriving at the RFC.

The Undersigned finds that substantial evidence supports the ALJ's conclusion that the limitation to simple, routine and repetitive work adequately accounts for Plaintiff's moderate limitations in concentration, persistence, and pace.  Plaintiff has failed to show, with objective medical evidence, that additional functional limitations were warranted.  The Court of Appeals for the Sixth Circuit has held that in the absence of evidence to the contrary, a limitation to simple, routine and repetitive tasks can adequately account for moderate limitations in concentration, persistence, and pace.  *Kepke v. Comm'r of Soc. Sec.*, 636 F. App'x 625, 635 (6th Cir. 2016).  Here too, Plaintiff cannot show that she is unable to perform simple, routine, and repetitive work despite her moderate limitations, particularly in light of the state agency consultants' conclusions.

Substantial evidence supports the ALJ's RFC determinations with respect to Plaintiff's limitations in concentration, persistence and pace.  It is therefore **RECOMMENDED** that the Court **OVERRULE** Plaintiff's second Statement of Error.

## VII. CONCLUSION

In sum, from a review of the record as a whole, the Undersigned concludes that substantial evidence supports the ALJ's decision denying benefits. Based on the foregoing, it is therefore, **RECOMMENDED** that Plaintiff's Statement of Errors (ECF No. 13) be **OVERRULED** and that the Commissioner's decision be **AFFIRMED.**

## VIII. PROCEDURE ON OBJECTIONS

If any party seeks review by the District Judge of this Report and Recommendation, that party may, within fourteen (14) days, file and serve on all parties objections to the Report an\d Recommendation, specifically designating this Report and Recommendation, and the part in question, as well as the basis for objection.  28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 72(b). Response to objections must be filed within fourteen (14) days after being served with a copy. Fed. R. Civ. P. 72(b).

The parties are specifically advised that the failure to object to the Report and Recommendation will result in a forfeiture of the right to *de novo* review by the District Judge and Forfeiture of the right to appeal the judgment of the District Court.  Even when timely objections are filed, appellate review of issues not raised in those objections is forfeited.  *Robert v. Tesson*, 507 F.3d 981, 994 (6th Cir. 2007) ("[A] general objection to a magistrate judge's report, which fails to specify the issues of contention, does not suffice to preserve an issue for appeal . . . .") (citation omitted)).

Date:   April 27, 2022                             /s/ *Elizabeth A. Preston Deavers*
                                                   Elizabeth A. Preston Deavers
                                                   United States Magistrate Judge